## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **vs.** ) | **Civil No. 25-cv-2220** |
| ) | |
| **STATE OF ILLINOIS;** JB ) | |
| PRITZKER, Governor of Illinois, in his ) | |
| Official Capacity; KWAME RAOUL, ) | |
| Attorney General of Illinois, in his ) | |
| Official Capacity, ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

### PRELIMINARY STATEMENT

1.    The United States is currently facing a national crisis of illegal immigration, *see, e.g.*, Proclamation No. 10,866, Declaring a National Emergency at the Southern Border of the United States, 90 Fed. Reg. 8327 (Jan. 20, 2025), and thus the Federal Government must employ all available legal measures to end that crisis grounded on its well-established, preeminent and preemptive authority to regulate immigration. This authority derives from the United States Constitution, numerous acts of Congress, and binding United States Supreme Court precedent. *See, e.g.*, U.S. Const. art. I, § 8, cl. 4; 8 U.S.C. §§ 1182, 1225–29a, 1231; *Arizona v. United States*, 567 U.S. 387, 394–95 (2012).

2.    Illinois Governor JB Pritzker, sued here in his official capacity, expressed a shared interest with the Federal Government in enforcing immigration laws. Just a few months ago, Governor Pritzker, at a press conference on immigration, pleaded "[p]lease, when you find

dangerous criminals, remove them" and "[l]et's all work together – federal and state law enforcement – to arrest the bad guys."[1] Public Act 104-0440 (formerly HB 1312), a newly enacted Illinois law, provides otherwise.

3.    Governor Pritzker himself signed this Act into law on December 9, 2025. Because this law went into effect upon signing, its unconstitutional impact is immediate. For example, the law includes an Illinois Bivens Act that purports to subject federal immigration officers to civil liability and punitive damages while acting under federal authority. The law also includes the Court Access, Safety, and Participation Act ("CASPA") which implements a ban on "civil arrests" on State courthouse grounds and within 1,000 feet of the courthouse.

4.    Illinois lawmakers themselves, including Senate President Don Harmon (sponsor of HB 1312), seemingly recognize the Act's unconstitutionality. Senator Harmon considered HB 1312 an "imperfect bill" and acknowledged that Illinois lawmakers were "playing with a stacked deck" against the Federal Government which has the "upper hand." Accordingly, he is "prepared for this law to be challenged."[2]

5.    Indeed, both laws violate long-settled principles of the Supremacy Clause, under which States have no power to "in any manner control[] the operations of" the Federal Government. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819); *see also Mayo v. United States*, 319 U.S. 441, 445 (1943) ("[T]he activities of the Federal Government are free from regulation by any state.").

---

[1] Brenden Moore, *Pritzker warns immigration crackdown becoming 'wider and more intense,'* Capitol News Illinois (Oct. 30, 2025), https://capitolnewsillinois.com/news/pritzker-warns-immigration-crackdown-becoming-wider-and-more-intense/.
[2] *Id.*

6.      The intergovernmental immunity doctrine is derived from this same principle, and a state law violates intergovernmental immunity if it "regulates the United States directly or discriminates against the Federal Government or those with whom it deals." *See North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion).

7.      The Illinois Bivens Act and the CASPA directly regulate the Federal Government by dictating how and where federal law enforcement officers may carry out their federal duties and unlawfully discriminate against federal law enforcement officers.

8.      The Illinois Bivens Act regulates the Federal Government by creating a private cause of action, exposing federal law enforcement officials to civil liability and punitive damages for discharging their federal duties.

9.      Likewise, the CASPA purports to regulate the Federal Government by erecting an artificial and specious "buffer zone" accessible to the public in which federal law enforcement officers are prohibited from carrying out their duties.

10.      The Illinois Bivens Act also expressly singles out "civil immigration enforcement" for disfavored treatment.

11.      These Acts—especially the creation of a state-sanctioned private remedy that inevitably will become a vehicle to threaten and harass federal officers—come at an already dangerous time for federal law enforcement officers. Immigration and Customs Enforcement ("ICE") officers alone are already facing "an 8,000% increase in death threats,"[3] an unprecedented increase of violence, and unprecedented levels of online doxxing. By enacting laws that subject

---

[3] Press Release, DHS, 8000% Increase in Death Threats Against DHS, ICE Law Enforcement as They Risk Their Lives to Remove the Worst of the Worst (Oct. 30, 2025), https://www.dhs.gov/news/2025/10/30/8000-increase-death-threats-against-ice-law-enforcement-they-risk-their-lives.

federal officers to civil liability and punitive damages, "sanctuary politicians" like Defendants "are contributing to the surge in violent threats and assaults."[4]

12.    The Illinois Bivens Act and the CASPA violate the Supremacy Clause both on their face and as applied to the Federal Government.

13.    The United States therefore brings this declaratory and injunctive action to invalidate Illinois Public Act 104-0440.

## JURISDICTION AND VENUE

14.    The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

15.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' acts or omissions giving rise to this Complaint concern and impact federal law enforcement activities in this District, and throughout the State of Illinois.

16.    The Court has the authority to provide the relief requested under 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

17.    Plaintiff, the United States of America, enforces federal laws through its Executive agencies, including the Department of Justice and its component agencies—the Federal Bureau of Investigation ("FBI") and the Drug Enforcement Administration ("DEA")—as well as the Department of Homeland Security ("DHS") and its component agencies—ICE and U.S. Customs and Border Protection ("CBP").

18.    Defendant State of Illinois is a state of the United States.

19.    Defendant JB Pritzker is the Governor of Illinois and is being sued in his official capacity. The Illinois Constitution provides that "[t]he Governor shall have the supreme executive

---

[4] *Id.*

power, and shall be responsible for the faithful execution of the laws." Ill. Const. art. V, § 8. Defendant Pritzker has made clear through his public statements[5] and actions that he has directed his administration, which includes the Illinois Attorney General, to implement these Acts in line with his policy proscriptions.

20.    Defendant Kwame Raoul is the Attorney General of Illinois and is being sued in his official capacity. The Illinois Attorney General "shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law." Ill. Const. art. V, § 15.

## THE SUPREMACY CLAUSE

21.    The Supremacy Clause of the United States Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, a state law is invalid if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[,]" *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), or if it "regulat[es] the United States directly or discriminat[es] against the Federal Government or those with whom it deals," *United States v. Washington*, 596 U.S. 832, 838 (2022) (emphasis omitted) (citation omitted).

## FEDERAL IMMIGRATION ENFORCEMENT

22.    The Constitution authorizes Congress to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3, and authorizes the President of the United States to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3.

---

[5] Press Release, Office of the Governor JB Pritzker, Gov. Pritzker Signs Bill to Protect Immigrants from Unjust Federal Actions (Dec. 9, 2025), https://gov-pritzker-newsroom.prezly.com/gov-pritzker-signs-bill-to-protect-immigrants-from-unjust-federal-actions.

23.     Subordinate officers and agents in various federal agencies assist the President in discharging that duty. *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203–04 (2020); *see also Tennessee v. Davis*, 100 U.S. 257, 263 (1879) (stating that the Federal Government "can act only through its officers and agents").

24.     Because the authority to execute the laws "extend[s] over the whole territory of the Union, acting upon the States and upon the people of the States[,]" federal officers and agents "must act within the States[,]" *Davis*, 100 U.S. at 263.

25.     The nation's immigration laws are primarily codified in the Immigration and Nationality Act ("INA"), which, pursuant to Congress's power to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, make up the framework for the "governance of immigration and alien status," *see Arizona*, 567 U.S. at 395.

26.     The INA confers upon the Executive Branch broad authority to inspect, investigate, arrest, detain, and remove aliens who are suspected of being, or found to be, unlawfully in the United States. *See, e.g.*, 8 U.S.C. §§ 1182, 1225–29a, 1231.

27.     For example, the INA authorizes implementation of programs such as ICE's Criminal Alien Program ("CAP"). CAP is an initiative dedicated to identifying, arresting, detaining, and removing non-citizens who commit serious crimes from the United States. CAP enforces federal mandates under the INA by prioritizing serious offenses, including aggravated felonies (such as murder, rape, sexual abuse of minors, drug trafficking, and firearms offenses), crimes of moral turpitude, and other violent or repeated violations.

28.     In conjunction with this broad authority, Congress codified principles of cooperation and comity between state and local authorities and the Federal Government in immigration enforcement. Specifically, Congress contemplated states and localities would

"cooperate with the [Secretary of DHS] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(10)(B). Indeed, "[c]onsultation between federal and state officials is an important feature of the immigration system." *Arizona*, 567 U.S. at 411.

29.     Further, Congress sought to affirmatively penalize efforts to obstruct immigration enforcement by prohibiting the "conceal[ing], harbor[ing], or shield[ing] from detection, or attempts to" accomplish the same, of any illegal "alien in any place, including any building or any means of transportation." 8 U.S.C. § 1324(a)(1)(A)(iii).

30.     DHS, through ICE and CBP, perform a significant portion of their law and immigration enforcement activities in the State of Illinois.

## FACTUAL BACKGROUND

31.     On December 9, 2025, Governor JB Pritzker signed into law an omnibus bill that purports to regulate federal law enforcement officers operating in Illinois. Among other provisions, this law includes the Illinois Bivens Act and the Court Access, Safety, and Participation Act.

### The Illinois Bivens Act

32.     A traditional *Bivens* action derives from the Supreme Court's holding in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), that an implied cause of action exists for an individual seeking damages directly against a federal officer for violating the United States Constitution while acting under federal authority.

33.     The Illinois Bivens Act establishes an unconstitutionally broad cause of action that exposes federal law enforcement officers to civil liability for state law violations while acting under federal authority. That is a policy choice for Congress, not each individual state, to make.

34.    Specifically, the Act provides that "[a]ny person may bring a civil action against any person who, while conducting civil immigration enforcement, knowingly engages in conduct that violates the Illinois Constitution or the United States Constitution." Section 5-10.

35.    The Act further subjects federal officers to "[a]ll monetary, injunctive, and declaratory relief available at common law" including punitive damages. Section 5-15(a).

36.    "If a plaintiff seeks punitive damages against a defendant who committed a violation of this Act while acting under the color of federal law, Illinois law, or other state law," the Act enumerates six factors relevant to "determining the reprehensibility of the defendant's conduct":

(1) [W]hether the defendant wore a facial covering while committing the violation;

(2) [W]hether, at the time of the violation, the defendant was a law enforcement officer who failed to identify or disclose that he or she was a law enforcement officer either verbally or by wearing identifying insignia, such as a badge, agency logo, or patch, or by providing his or her name, badge or identification number, and the employing agency or department;

(3) [W]hether, at the time of the violation, the defendant was a law enforcement officer who was required by State or federal law or regulation or agency policy to wear and use an officer-worn body camera during the type of activity that gave rise to the deprivation of rights and failed to do so;

(4) [W]hether the defendant was operating or using a motor vehicle without a license plate or with a non-Illinois license plate;

(5) [W]hether the defendant used crowd control equipment at the time of the violation; or

(6) [W]hether the defendant intentionally violated or failed to comply with any material term or condition of a court order or consent decree that was issued by a court, that was in effect at the time of the violation of this Act, that applied to the person acting under color of law, and that was issued or entered into in part to address or prevent future violations of this Act relating to the conduct complained of.

Section 5-15(a)(1)-(6).

37.    Finally, the Illinois Bivens Act includes a fee-shifting provision, providing that "a court shall award reasonable attorney's fees and costs, including expert witness fees and other litigation expenses, to a plaintiff who is a prevailing party in any action brought under this Act. In awarding reasonable attorney's fees, the court shall consider the degree to which the relief obtained relates to the relief sought." Section 5-15(b).

**The Court Access, Safety, and Participation Act (CASPA)**

38.    The CASPA, also signed into law on December 9, 2025, provides that "[a] person duly and in good faith attending a State court proceeding in which the person is a party, a witness, a potential witness, or a court companion of a party, witness, or potential witness is privileged from civil arrest while going to, remaining at, and returning from the court proceeding[.]" Section 10-15(a).

39.    This provision prohibits law enforcement officers from making "civil arrests" "(1) at the place of the court proceedings; (2) within the courthouse building; (3) on the premises of the courthouse, including parking facilities serving the courthouse; (4) on any sidewalk, parkway, and street surrounding the courthouse and its premises; and (5) on any public way within 1,000 feet of the courthouse including a sidewalk, parkway, or street." Section 10-15(a)(1)-(5).

40.    The Act defines "[l]aw enforcement agency" as "any entity with statutory police powers and the ability to employ individuals authorized to make arrests." Section 10-10.

41.    The Act broadly defines "[c]ourt companion" to mean any of the following individuals "whose purpose is to support, assist, or accompany a person who is going to, remaining at, or returning from a court proceeding":

(1) a spouse, domestic partner, or person who has a dating or engagement relationship with the party, witness, or potential witness;

(2) a biological parent, foster parent, adoptive parent, or stepparent of a party, witness, or potential witness; minor children or other persons under the care of a party, witness, or potential witness;

(3) interpreters;

(4) translators;

(5) a person assisting the party, witness, or potential witness with reading or completing court forms or other documents;

(6) persons providing health care or assistance to a party, witness, or potential witness to allow that individual to participate in the court proceeding;

(7) a case manager or social worker for the party, witness, or potential witness;

(8) a domestic violence or sexual assault advocate;

(9) a person transporting a party, witness, or potential witness to or from the court proceeding.

*Id.*

42.    An "[a]rrest" is defined in the Act as "a law enforcement agency or its officers taking an individual into custody." *Id.*

43.    "Civil arrest" is defined in the Act as any arrest that is not: "(1) a criminal arrest for an alleged criminal violation of any federal, State, or local law; (2) an arrest for any violation of any condition of probation, parole, pretrial release, supervised release, or mandatory supervised release for which arrest is otherwise authorized by law; or (3) an arrest supported by a judicial warrant or judicial order authorizing the arrest." *Id.*

44.    Violations of the CASPA are punishable by civil liability for false imprisonment, including actual damages and statutory damages of $10,000. Section 10-25.

## THE CHALLENGED ACTS DIRECTLY HARM

## THE FEDERAL GOVERNMENT

45.    The challenged provisions of Public Act 104-0440 directly harm the Federal Government by regulating federal officers' conduct, discriminating against federal law enforcement officers, and recklessly disregarding federal officers' safety and operational needs – all while predicated on the fallacy that civil and criminal immigration enforcement are distinct.

### The Illinois Bivens Act and CASPA Rely on the Misconception that Federal Law Enforcement Officers Conduct Only "Civil" Immigration Actions

46.    To the extent the Illinois Bivens Act and CASPA were intended to thwart federal immigration enforcement, both Acts rely on the misconception that immigration-related arrests can be neatly divided into "civil" and "criminal" categories. Instead, the vast majority of removal cases involve a combination of administrative, civil, and criminal charges.

47.    For example, an illegal alien may be subject to expedited removal (an administrative charge), civil monetary penalties for willful failure to register, and criminal prosecution for illegal re-entry. *See* 8 U.S.C. §§ 1302, 1326.

48.     By declaring certain federal actions "civil" and therefore beyond the State's duty to respect, Illinois has erected a false dichotomy that undermines the entire statutory scheme Congress designed.

49.     The effects of this misconception will permeate all areas of law enforcement—administrative, civil, and criminal alike—causing confusion and chaos by unjustly subjecting officers to liability for discharging their lawful duties under federal law.

## The Federal *Bivens* Cause of Action Regulates How Federal
## Law Enforcement Carries out Its Duties

50.     The creation of the Illinois Bivens Act harms the Federal Government because a private cause of action against a federal law enforcement officer even for a violation of the United States Constitution is, on its face, a direct regulation of the Federal Government.

51.     While the Constitution obviously regulates federal officers itself, that is not the same as private cause of action, much less one for damages. Indeed, Congress has chosen not to create a private cause of action against federal officers despite creating one against state officers. *See* 42 U.S.C. § 1983. That is a policy choice for Congress to make in its regulation of federal officers, not each individual state. That is because the creation of a cause of action, especially for damages, regulates the conduct of officers and can chill the zealous execution of their duties.

52.     Indeed, in the gap for damages actions against federal officers, the Supreme Court invented *Bivens* cause of actions out of thin air. The Supreme Court has significantly limited *Bivens* actions, however, because "[a]t bottom, creating a cause of action is a legislative endeavor. Courts engaged in that unenviable task must evaluate a range of *policy* considerations at least as broad as the range a legislature would consider" such as "economic and governmental concerns, administrative costs, and the impact on governmental operations systemwide." *Egbert v. Boule*,

596 U.S. 482, 491 (2022) (citation modified) (emphasis added). Because the creation of a cause of action (especially for a "damages remedy") is inherently a policy decision, the "utmost deference to Congress' preeminent authority in this area." *Id.* at 491-92. Unsurprisingly, "Congress is far more competent than the Judiciary to weigh such policy considerations," so federal courts almost never extend *Bivens* actions *Id.* at 491 (citation omitted). Again, this is because the creation of even a constitutional cause of action is inherently a policy choice; one that Congress must make.

53.     Thus, the creation of a cause of action itself is a regulatory action. A cause of action, especially for damages, is designed to incentivize those who may be sued to comport with the underlying substantive law. And the threat of liability can (and is meant to) chill "the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties." *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949)). Indeed, the "possibility of an extended proceeding alone may render [officials] unduly cautious in the discharge of [their] official duties." *Trump v. United States*, 603 U.S. 593, 636–37 (2024) (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 752 n.32 (1982)). "The Constitution does not tolerate such impediments to the 'effective functioning of government.'" *Id.* (quoting *Fitzgerald*, 457 U.S. at 751). This is why Congress, not every individual state, "is in a far better position than a court to evaluate the impact of a new species of litigation" against those who act on the public's behalf; "Congress can tailor any remedy to the problem perceived, thus lessening the risk of raising a tide of suits threatening legitimate initiative on the part of the Government's employees." *Wilkie v. Robbins*, 551 U.S. 537, 562 (2007) (citation omitted).

54.     As a result, the Plaintiff is harmed by the mere creation of a cause of action, even for federal constitutional claims. This is because the mere threat of a suit, its proceedings, and eventual liability can chill the zealous enforcement of federal law.

**The State Constitutional Cause of Action Regulates How Federal**

**Law Enforcement Carries out Its Duties**

55.　　The same is doubly true for the Illinois Bivens Act's creation of a private cause of action to sue federal officials for a violation of Illinois's own Constitution. State laws cannot regulate federal conduct. That is equally true of state constitutions. *See Doan v. Bergeron*, Civ. A. No. 15-cv-11725, 2016 WL 5346935, at *10 (D. Mass. Sep. 23, 2016) (collecting cases).

56.　　The Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity and allows a plaintiff to sue the United States to address harm caused by the negligent or wrongful act or omission of a federal employee while acting within the scope of his office or employment.　28 U.S.C. § 2675(a).

57.　　Under the FTCA, the United States is liable only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id*. § 1346(b)(1).　The FTCA, therefore, incorporates the substantive law of the state where an alleged tortious act or omission occurred.

58.　　The Westfall Act then "amended the FTCA to make its remedy against the United States the exclusive remedy for most claims against [federal] Government employees arising out of their official conduct." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010). The Westfall Act contains an exception for "civil action[s] against an employee of the Government . . . which [are] brought for a violation of the Constitution of the United States . . ." 28 U.S.C. § 2679(b)(2)(A). Clearly, no such claim can be brought against federal officers for violating a state constitution.

**The Illinois Bivens Act Directly Regulates and Harms Federal Conduct**

59.　　The Illinois Bivens Act makes the regulatory nature of its cause of action and the harm even more apparent. Not only are federal officers potentially subject to arduous proceedings

and actual damages, they could face punitive damages for particular conduct not otherwise illegal under federal law. That constitutes direct regulation on federal officers apart from the federal or state Constitution.

60.     This is because the Illinois Bivens Act allows for *punitive* damages if the official otherwise violated the law while (1) wearing a facial covering, (2) failing to identify oneself as law enforcement or not displaying a identifier, (3) failing to use a body camera, (4) operating a vehicle without an Illinois license, (5) using crowd control equipment, or (6) violating a court order. Section 5-15(a)(1)-(6).

61.     Punitive damages are inherently regulatory, as it is a choice by the state to punish certain conduct rather than a reflection of actual damages. The entire point is to deter federal officers from engaging in conduct that could result in ruinous punitive damages. This includes conduct permissible under federal law, such as wearing a mask. In effect, this is a backdoor way for Illinois to try and regulate the uniform and conduct of federal officers. In doing so, Illinois makes clear that the entire Illinois Bivens Act is designed to regulate federal officers and incentivize their behavior.

62.     The Illinois Bivens Act also provides a direct route for individuals to further harass and threaten federal officers. ICE officers alone "are now facing an 8,000% increase in death threats against them" which are serious and potentially deadly.[6] The threats range from taunting, online doxxing, stalking, using vehicles as weapons, and additional physical violence. There are even public websites that seek and publish personal information about federal officers to harass and threaten them and their families.

---

[6] *See* Press Release, 8000% Increase in Death Threats, *supra* note 3.

63.     The creation and enforcement of the Illinois Bivens Act not only regulates the Federal Government through officer conduct, it dangerously increases the likelihood of threats and harassment of federal officers.

**The Illinois Bivens Act Discriminates Against the Federal Government**

64.     The Illinois Bivens Act expressly singles out "civil immigration enforcement" for disfavored treatment, thereby directly discriminating against the Federal Government, which has broad authority to enforce immigration. Section 5-10(a).

65.     Further, the Act's codified factors for determining "the reprehensibility of the defendant's conduct" disproportionately apply to federal law enforcements officials or their necessary protective measures (e.g., whether the officer wore a facial covering, whether the officers failed to identify themselves as law enforcement, and whether the officer was operating a vehicle without an Illinois license plate). Section 5-15(a).

66.     Given the rise in personal threats and violence that federal agents face, as well as the necessity for undercover operations, federal law enforcement agencies permit their officers to choose whether to wear facial coverings to protect their identity. A federal officer's election to wear facial covering is not reprehensible conduct.

67.     Another factor—operating a vehicle with a non-Illinois license plate—subjects federal law enforcement officers to unfavorable treatment as compared to Illinois state and local law enforcement officers. Federal officers often operate agency-owned vehicles with U.S. Government license plates. Operating an agency-owned vehicle with a U.S. Government license plate is not reprehensible conduct.

**The CASPA Directly Regulates and Harms the Federal Government**

68.    The CASPA also directly regulates the Federal Government by dictating where federal agents may conduct civil arrests not only on courthouse grounds but anywhere within 1,000 feet of the courthouse.

69.    Further, CASPA's list of permissible "court companion[s]" is so broad that the Act conceivably prevents federal law enforcement officers from conducting necessary arrests of rideshare or taxi drivers transporting individuals to and from the courthouse. Section 10-10. The CASPA is also silent as to how an officer should know whether an individual is traveling to or from a courthouse before attempting an arrest.

70.    Other legitimate civil law enforcement activities near courthouse grounds could involve threats to national security or risks of violence and physical harm. Therefore, Illinois's restrictions on civil arrests impede federal law enforcement and jeopardize public safety.

71.    Conducting an arrest at or near a courthouse often reduces the risk of flight and safety risks to the public, law enforcement officers, and arrestees themselves. This is in part because individuals are usually screened for weapons or other contraband before entering a courthouse. *See* Memorandum from Acting Director of ICE Caleb Vitello, Interim Guidance: Civil Immigration Enforcement Actions in or Near Courthouses (Jan. 21, 2025).

72.    Moreover, the CASPA regulates the Federal Government by undermining ICE's enforcement efforts through programs such as CAP. In Illinois, sanctuary policies—including Illinois's refusal to honor ICE detainers and to release criminal aliens without notifying ICE, forcing ICE to locate and arrest them at-large in the community—have left courthouses as one of the few predictable locations where CAP officers can find criminal aliens and safely take them into custody. When courthouse operations are required, CAP officers fully respect the integrity

and decorum of ongoing judicial proceedings. Furthermore, CAP officers routinely communicate and coordinate with court security and staff to ensure operations are completed without confrontation and without disruption to state action.

73.      By dictating where federal law enforcement can effect civil arrests and who may be arrested, the CASPA directly regulates the Federal Government in direct contravention of the Supremacy Clause of the United States Constitution.

**Both Acts Contribute to Violence Against Law Enforcement Officers**

74.      Federal law enforcement officers are already facing an increasingly hostile environment that jeopardizes their safety and the safety of their families due to increased threats, assaults, and online doxxing.[7] The violent rhetoric has even materialized into direct violence towards officers. On September 26, 2025, rioters blocked access to gates in front of the Broadview Processing Center in Broadview, Illinois and chanted "Arrest ICE, Shoot ICE."[8]

75.      On November 8, 2025, shots were fired at CBP officers performing immigration enforcement in the Chicago neighborhood of Little Village.[9] That same day, rioters used their vehicles as weapons and attempted to ram their cars multiple times into the CBP convoy.[10]

76.      The creation of the Illinois Bivens Act provides an invitation for private actors to harass and threaten federal law enforcement through a state-sanctioned court action.

---

[7] *See* Press Release, 8000% Increase in Death Threats, *supra* note 3.

[8] Press Release, DHS, Days After the Dallas Terrorist Attack on ICE, Rioters Gather Outside an ICE Broadview, IL Facility and Chant "Arrest ICE, Shoot ICE" (Sept. 26, 2025), https://www.dhs.gov/news/2025/09/26/days-after-dallas-terrorist-attack-ice-rioters-gather-outside-ice-broadview-il.

[9] Press Release, DHS, Border Patrol Agents Face Shots Fired, Vehicle Rammings, Bricks Thrown in Chicago on Saturday (Nov. 9, 2025), https://www.dhs.gov/news/2025/11/09/border-patrol-agents-face-shots-fired-vehicle-rammings-bricks-thrown-chicago.

[10] Press Release, DHS, ICE and CBP Officers Face Unprecedented Surge in Vehicle Ramming Attacks (Nov. 18, 2025), https://www.dhs.gov/news/2025/11/18/ice-and-cbp-officers-face-unprecedented-surge-vehicle-ramming-attacks.

77.     Equally dangerous, the Illinois Bivens Act authorizes the imposition of punitive damages that is designed to punish federal law enforcement officers.

78.     Further, the CASPA subjects law enforcement officers to "civil damages for false imprisonment, including actual damages and statutory damages of $10,000," for lawful measures required to protect public safety. Section 10-25(a).

79.     As a result, both the Illinois Bivens Act and the CASPA contribute to, rather than try to mitigate, the violent rhetoric against law enforcement officers tasked with protecting public safety.

## CLAIMS FOR RELIEF

## COUNT ONE – VIOLATION OF THE SUPREMACY CLAUSE

## (UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)

80.     Plaintiff hereby incorporates paragraphs 1 through 79 of the Complaint as if fully stated herein.

81.     Defendants' enforcement of the challenged provisions of the Illinois Bivens Act and the CASPA constitute unlawful regulation of the Federal Government.

82.     By creating a cause of action to hold federal law enforcement officers liable for violations of federal and state law, and by attempting to dictate where federal officers can effectuate arrests, the Illinois Bivens Act and the CASPA, respectively, purport to directly regulate the Federal Government in violation of the intergovernmental immunity doctrine.

83.     The Illinois Bivens Act's codified determining factors for the "reprehensibility of the defendant's conduct[,]" unlawfully seek to regulate the actions of federal law enforcement and deter officers from lawful conduct, including wearing necessary protective measures such as facial

coverings, failing to identify themselves verbally or physically, or driving a vehicle without an Illinois state license plate. Section 5-15(a).

84.     The Federal Government would be harmed by the application of the Illinois Bivens Act to federal law enforcements officers, including their exposure to civil liability and punitive damages.

85.     The CASPA purports to regulate the Federal Government by creating a zone inside and around courthouses within which federal law enforcement officers may not make arrests.

86.     The CASPA's lengthy list of "court companions" privileged from arrest dictates whom federal law enforcement officers may arrest in public locations. Section 10-10.

87.     Accordingly, this direct regulation of the Federal Government renders the Illinois Bivens Act and the CASPA invalid under the Supremacy Clause.

## COUNT TWO – VIOLATION OF THE SUPREMACY CLAUSE
## (UNLAWFUL DISCRIMINATION AGAINST THE FEDERAL GOVERNMENT)

88.     Plaintiff hereby incorporates paragraphs 1 through 87 of the Complaint as if fully stated herein.

89.     The Illinois Bivens Act unlawfully discriminates against the Federal Government.

90.     The Illinois Bivens Act expressly singles out for disfavored treatment officers who conduct "civil immigration enforcement," an area of law enforcement largely reserved to federal officers. Section 5-10(a).

91.     The Illinois Bivens Act also discriminates against federal law enforcement officers by deeming an indicator of reprehensibility "operating or using a motor vehicle . . . with a non-Illinois license plate[,]" as many federal officers do. Section 5-15(a)(4).

92.     Such discriminatory targeting of the Federal Government is unlawful under the intergovernmental immunity doctrine.   *See, e.g.*, *Washington*, 596 U.S. at 839 (A "state law discriminates against the Federal Government . . . if it singles them out for less favorable treatment or if it regulates them unfavorably on some basis related to their governmental status." (citations and alterations omitted)).

93.     For this additional, alternative reason, the Illinois Bivens Act violates the Supremacy Clause.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1.  That this Court enter a judgment declaring that the challenged provisions of the Illinois Bivens Act and the CASPA violate the Supremacy Clause and are therefore invalid as to the Federal Government and its officers and employees;

2.   That this Court enter a permanent injunction barring Defendants—as well as any of their successors, agents, or employees—from enforcing the Illinois Bivens Act and the CASPA;

3.  That this Court award the United States its costs and fees in this action; and

4.  That this Court award any other relief it deems just and proper.

DATED: December 22, 2025

Respectfully submitted,

STEVEN D. WEINHOEFT
*United States Attorney*

*United States Attorney's Office*
*Southern District of Illinois*
*9 Executive Drive*
*Fairview Heights, Illinois 62208*
*(618) 628-3700*

STANLEY E. WOODWARD, JR.
*Associate Attorney General*

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC J. HAMILTON
*Deputy Assistant Attorney General*

TIBERIUS DAVIS
*Counsel to the Assistant Attorney General*

ALEXANDER K. HAAS
*Director*

JACQUELINE COLEMAN SNEAD
*Assistant Director*

 *s/ James J. Wen*
JAMES J. WEN (NY BAR NO. 5422126)
JACQUELINE LAU
(D.C. BAR NO. 90024952)
*Trial Attorneys*

*United States Department of Justice*
*Civil Division*
*Federal Programs Branch*
*1100 L Street NW*
*Washington, DC 20005*

*(202) 616-8185*
*James.J.Wen@usdoj.gov*

*Attorneys for the United States*